# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ILLINOIS CASUALTY COMPANY,     ) | |
| )  | |
| Plaintiff,     ) | |
| )  | |
| v.                                                                    ) | Case No. _____ |
| )  | |
| MEYERS' G.M. ENTERPRISES, INC., d/b/a ) | |
| Cajun Club, R&N ENTERPRISES, LTD., d/b/a ) | |
| Cajun Club, ARIANNY CELESTE LOPEZ, ) | |
| BRENDA GEIGER, CIELO JEAN GIBSON, ) | |
| HILARY HEPNER, JAIME LONGORIA, ) | |
| JESSICA HINTON, JOANNA KRUPA, ) | |
| KRYSTAL HIPWELL, LINA POSADA, ) | |
| LUCY PINDER, MASHA LUND, ) | |
| ROSIE WICKS, and TARA LEIGH PATRICK,  ) | |
| )  | |
| Defendants.     ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, ILLINOIS CASUALTY COMPANY ("ICC"), by its undersigned attorneys, brings this Complaint for Declaratory Judgment against Defendants, MEYERS' G.M. ENTERPRISES, INC., d/b/a Cajun Club ("Meyers"), R&N ENTERPRISES, LTD., d/b/a Cajun Club ("R&N"), Arianny Celeste Lopez, Brenda Geiger, Cielo Jean Gibson, Hilary Hepner, Jaime Longoria, Jessica Hinton, Joanna Krupa, Krystal Hipwell, Lina Posada, Lucy Pinder, Masha Lund, Rosie Wicks, and Tara Leigh Patrick ("Underlying Plaintiffs") and alleges and states as follows:

### STATEMENT OF THE CASE

1.     ICC brings this insurance coverage action to obtain a judicial determination that it does not have the duty to defend or indemnify Defendants Meyers and R&N, under the Businessowners Liability Coverage Part of the subject insurance Policy, in connection with a lawsuit pending against them in the U.S. District Court for the Western District of Wisconsin, No. 3:21-cv-657-wmc, captioned *Lopez et al. v. Meyers' G.M. Enterprises, Inc. et al.* ("Underlying Lawsuit").

## THE PARTIES

2.	Plaintiff, ICC, is a corporation organized under the laws of Illinois with its principal place of business in Illinois.

3.	Defendant, Meyers, is a corporation organized under the laws of Wisconsin with its principal place of business located in Houlton, Wisconsin.

4.	Defendant, R&N, is a corporation organized under the laws of Wisconsin with its principal place of business located in Houlton, Wisconsin.

5.	Arianny Celeste Lopez is a citizen of California. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

6.	Brenda Geiger is a citizen of New York. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

7.	Cielo Jean Gibson is a citizen of California. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

8.	Hilary Hepner is a citizen of South Carolina. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

9.	Jaime Longoria, also known as Jaime Edmondson, is a citizen of Arizona. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

10.	Joanna Krupa is a citizen of California. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

11.	Krystal Hipwell is a citizen of the Commonwealth of Australia. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

12.	Jessica Hinton is a citizen of California. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

13. Lina Posada is a citizen of California. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

14. Lucy Pinder is a citizen of the United Kingdom of Great Britain and Northern Ireland. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

15. Masha Lund is a citizen of California. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

16. Rosie Wicks, also known as Rosie Jones, is a citizen of the United Kingdom of Great Britain and Northern Ireland. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

17. Tara Leigh Patrick, also known as Carmen Electra, is a citizen of California. She is named as a potentially interested party by virtue of her status as a plaintiff in the Underlying Lawsuit.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over all parties, pursuant to 28 U.S.C. § 1332(a), since the amount in controversy exceeds $75,000, exclusive of interests and costs, and the parties are citizens of different states. More specifically, the difference in the available insurance coverage is more than $1,000,000, as the Underlying Plaintiffs are seeking to recover in excess of $1,215,000 in the Underlying Lawsuit.

19. Venue is appropriate under 28 U.S.C. § 1391(b)(1), as Meyers and R&N, and possibly some of the Underlying Plaintiffs, conduct business in this district; this action involves a coverage dispute with respect to the Underlying Lawsuit pending in this district; and the coverage dispute arises from events that occurred in this district.

20. An actual justiciable controversy exists between ICC, on the one hand, and Meyers, R&N, and the Underlying Plaintiffs, on the other hand, and by the terms and provisions of Rule 57

of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is vested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

## THE ICC POLICIES

21. ICC issued to R&N a businessowners policy, No. BP39343, effective October 13, 2018 to October 13, 2019, No. BP39343 ("2018-2019 Policy"). A true and correct copy of the 2018-2019 Policy is attached hereto as **Exhibit A**.

22. The 2018-2019 Policy was then renewed, effective October 13, 2019 to October 13, 2020, using the same number, BP39343 ("2019-2020 Policy"). A true and correct copy of the 2019-2020 Policy is attached hereto as **Exhibit B**.

23. The 2019-2020 Policy was then renewed, effective October 13, 2020 to October 13, 2021, using No. BP44919 ("2020-2021 Policy"). A true and correct copy of the 2020-2021 Policy is attached hereto as **Exhibit C**.

24. The 2020-2021 Policy was then renewed, effective October 13, 2021 to October 13, 2022, using the same No. BP44919 ("2021-2022 Policy"). A true and correct copy of the 2021-2022 Policy is attached hereto as **Exhibit D**.

25. Each of the 2018-2019, 2019-2020, 2020-2021, and 2021-2022 Policies contains a Businessowners Liability Coverage Form, which states, in relevant part, as follows:

> **A.    Coverage**
>
> **1.    Business Liability**
>
> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of … "personal and advertising injury" … to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages for … "personal and advertising injury" to which this insurance does not apply. …

\* \* \*

**B.** **Exclusions**

**1.** **Applicable To Business Liability Coverage**

This insurance does not apply to:

\* \* \*

**d.** **Laws**

Any liability or legal obligation of any insured with respect to … "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

\* \* \*

**(12)** Any federal, state, county, municipal or local consumer fraud protection law, regulation, ordinance, order or directive barring fraud, unfair competition, and/or deceptive business practices; or

**(13)** Any amendment of or addition to these laws or by any similar statutes, ordinances, orders, directives or regulations.

\* \* \*

**w.** **Personal And Advertising Injury**

**(1)** This insurance does not apply to "Personal and advertising injury":

**(a)** Caused by or at the direction of any insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**(b)** Arising out of oral or written publication of material, in any manner, if done by or at the direction of any insured with knowledge of its falsity.

**(c)** Arising out of oral or written publication of material in any manner whose first publication

took place before the beginning of the policy period.

\* \* \*

**(f)** Arising out of the unauthorized use of another's name or product in your email address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**(g)** Arising out the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

\* \* \*

**(i)** Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

\* \* \*

**(2)** **Cyber Protection**

This insurance does not apply any of the following, as defined under the Cyber Protection Form BL EC 06, except to the extent that coverage may be provided under the Cyber Protection Form BL EC 06.

**(a)** Multimedia Liability

\* \* \*

26. Each of the Policies defines "personal and advertising injury" as "injury … arising out of one or more of the following offenses: … (4) [o]ral or written publication, in any manner, or material that slanders or libels a person or organization or disparages a person's or organization's

goods, products or services … (5) [t]he use of another's advertising idea in your 'advertisement'; or (6) [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement.'"

27. Each of the Policies includes separate coverage for Multimedia Liability Coverage, which applies to "damages" which an insured becomes legally obligated to pay "resulting from a 'claim' for an actual or alleged 'multimedia peril.'" "Multimedia peril" is then defined as:

> … [T]he release or display of any "electronic media" on your "internet" site or "print media" for which you are solely responsible, which directly results in any of the following:
>
> **a.** Any form of defamation or other tort related to the disparagement or harm to the reputation or character of any person or organization, including libel, slander, product disparagement, or trade libel;
>
> **b.** Invasion, infringement or interference with an individual's right of privacy including false light, intrusion upon seclusion, commercial misappropriation of name, person, or likeness, and public disclosure of private facts;
>
> **c.** Plagiarism, piracy, or misappropriation of ideas under an implied contract;
>
> **d.** Infringement of copyright, trademark, trade name, trade dress, title, slogan, service mark or service name; or
>
> **e.** Domain name infringement or improper deep-linking or framing.

\* \* \*

28. For each of the Policies, the Businessowners Liability Coverage Part is subject to a limit of $1,000,000 for Personal & Advertising Injury sustained by any one person or organization. Moreover, the Businessowners Liability Coverage Part is subject to a $2,000,000 aggregate.

29. For each of the Policies, Multimedia Liability coverage under the Cyber Protection Coverage Part is subject to a limit of $50,000 per "claim." "Claim" is defined, in pertinent part, as a civil proceeding initiated against an insured, commenced by the service of a complaint. The Policies state that the per claim limit "is the most [ICC] will pay for each 'claim' under each Coverage

Agreement of this form, including 'defense costs' where applicable, regardless of … the number of individuals or entities making a 'claim' … or the number of 'claims' made."

## THE UNDERLYING LAWSUIT

30. On October 18, 2021, the Underlying Plaintiffs initiated the Underlying Lawsuit with the filing of a Complaint and Jury Demand"("Initial Complaint") against Meyers. They then filed on August 30, 2022 a First Amended Complaint and Jury Demand that added R&N as a defendant ("Underlying Lawsuit"). A true and correct copy of the First Amended Complaint and Jury Demand is attached hereto as **Exhibit E**.

31. The Underlying Plaintiffs allege that Meyers and R&N used without their authorization or consent their images, photos, and likenesses on Cajun Club's Facebook and Instagram accounts and that the same constitutes: (1) violation section 43 of the Lanham Act, 15 U.S.C. §1125(a) *et seq.*; (2) violation of the Wisconsin Right of Privacy statute, Wis. Stat. § 995.50; (3) tortious appropriation under Wisconsin common law; (4) negligence under Wisconsin common law; and (5) unjust enrichment under Wisconsin common law.

32. The Underlying Plaintiffs allege that Meyers and R&N are jointly responsible for the production and posting of advertisements for the Cajun Club through common managers and employees and coordinated social media advertising campaigns.

33. The Underlying Plaintiffs allege that Meyers and R&N placed the Underlying Plaintiffs' images, likenesses, and trade dresses on the Cajun Club's Facebook and Instagram accounts, between July 2019 and June 27, 2021, thereby conveying and reasonably suggesting falsely and fraudulently that the Underlying Plaintiffs endorse the Cajun Club, are affiliated with the Cajun Club, participated in the Cajun Club, may have appeared at the Cajun Club, sponsored the Cajun Club, or agreed to advertise the Cajun Club.

34. The Underlying Plaintiffs allege that Meyers and R&N's unauthorized use of Underlying Plaintiffs' images constitutes knowing, willful, fraudulent, and/or intentional conduct.

35. In Count I (Lanham Act), the Underlying Plaintiffs allege that Meyers and R&N's unauthorized use and misappropriation of the Underlying Plaintiffs' images, likenesses, identities, and trade dress without their consent was willful and deliberate and constituted a violation of their trademark rights under the Lanham Act. It is further alleged that Meyers and R&N's actions created "the false impression that [the Underlying Plaintiffs] are somehow affiliated with, have endorsed, promoted, agreed to advertise, would be appearing at, or otherwise participated in the Club" and were "likely to cause confusion as to [the Underlying Plaintiffs'] affiliation with, sponsorship of, endorsement of, agreement to advertise or promote, and/or participation in the Club."

36. In Count II (tortious appropriation), Underlying Plaintiffs allege that Meyers and R&N's unauthorized use of Underlying Plaintiffs' images and likenesses to promote and advertise the Cajun Club deprived Underlying Plaintiffs of the right to control the commercial exploitation of each of their identities. It is further alleged that Meyers and R&N used the Underlying Plaintiffs' "images and likenesses for advertising purposes, specifically, to promote and advertise the Club." It is also alleged that Meyers and R&N's misconduct was intentional, knowing, willful, and deliberate.

37. In Count III (Wisconsin Right of Publicity), the Underlying Plaintiffs allege that Meyers and R&N invaded Underlying Plaintiffs' statutory rights of publicity through their alleged wrongful publications.

38. In Count IV (negligence), the Underlying Plaintiffs allege that Meyers and R&N failed to supervise their managers, employees, agents, and contractors and promulgate policies and procedures regarding the legal use of images in advertising on their social media accounts, which allowed Meyers and R&N to publish the Underlying Plaintiffs' images in Meyers and R&N's advertisements.

39. In Count V (unjust enrichment), the Underlying Plaintiffs allege that Meyers and R&N have earned and continue to earn and withhold profits attributable to the unlawful use of the Underlying Plaintiffs' images, entitling the Underlying Plaintiffs to a disgorgement of those ill-gotten gains as remuneration.

40. ICC is defending Meyers and R&N, pursuant to a full and complete reservation of rights, including the right to disclaim any and all coverage available under the subject insurance policies, in the Underlying Lawsuit.

## GROUNDS FOR DECLARATORY JUDGMENT: NO DUTY TO DEFEND OR INDEMNIFY UNDER THE POLICIES' BUSINESSOWNERS LIABILITY COVERAGE PART

41. ICC realleges and restates Paragraphs 1-40 above as if fully stated herein.

42. According to Exclusion B.1.w.(2), no coverage is available under the Businessowners Liability Coverage Part for claims of Multimedia Liability, which includes "damages" that an insured becomes legally obligated to pay "resulting from a 'claim' for an actual or alleged 'multimedia peril.'" And, "multimedia peril" is defined as the display on Meyers and R&N's "internet" site, which necessarily includes their social media accounts, and which results in alleged defamation, disparagement, invasion or infringement upon a person's right of privacy, commercial misappropriation of a person or her likeness, misappropriation of ideas, trademark infringement, and trade dress infringement.

43. Each and every claim by the Underlying Plaintiffs falls squarely within the Policies' definition of "multimedia peril." In turn, while certain coverage may be available under the Policies' Cyber Protection Coverage Part, there is no coverage available under the Policies' Businessowners Liability Coverage Part.

44. Additionally, according to Exclusion B.1.d.(12), no coverage is available under the Businessowners Liability Coverage Part for alleged liability for "personal and advertising injury"

"arising directly or indirectly out of any action or omission that violates or is alleged to violate" federal or state consumer fraud protection laws or regulations barring fraud, unfair competition, and/or deceptive business practices." This also includes "any amendment of or addition to these laws or by any similar statutes …."

45. The Underlying Plaintiffs alleged that Meyers and R&N violated the Lanham Act and Wisconsin Right of Publicity statute based on their misuse and misappropriation of the Underlying Plaintiffs' images, likenesses, trade dress, and more, without consent, in Meyers and R&N's advertisements in or involving their Facebook and Instagram accounts.

46. Therefore, ICC has no duty to defend Meyers or R&N under the Policies' Businessowners Liability Coverage Part.

47. Further, since ICC has no duty to defend Meyers or R&N under the Policies' Businessowners Liability Coverage Part, ICC necessarily has no duty to indemnify them under the Policies' Businessowners Liability Coverage Part.

48. Should there be an adverse verdict or settlement against Meyers or R&N in the Underlying Lawsuit, ICC expressly reserves the right to rely on all of its Policy defenses, including, but not limited to those found in the Insuring Agreement, Exclusions, and Conditions sections of the Policies.

WHEREFORE, Plaintiff, ILLINOIS CASUALTY COMPANY, prays that this Court enter judgment in its favor and against all Defendants on its Complaint for Declaratory Judgment and that:

a) The Court determine and adjudicate that ICC has no duty to defend Meyers' G.M. Enterprises, Inc., d/b/a Cajun Club, under the Policies' Businessowners Liability Coverage Part, in connection with the Underlying Lawsuit.

b) The Court determine and adjudicate that ICC has no duty to indemnify Meyers' G.M. Enterprises, Inc., d/b/a Cajun Club, under the Policies' Businessowners Liability Coverage Part, in connection with the Underlying Lawsuit.

| | |
|---|---|
| c) | The Court determine and adjudicate that ICC has no duty to defend R&N Enterprises, ltd. d/b/a Cajun Club, under the Policies' Businessowners Liability Coverage Part, in connection with the Underlying Lawsuit. |
| d) | The Court determine and adjudicate that ICC has no duty to defend R&N Enterprises, ltd. d/b/a Cajun Club, under the Policies' Businessowners Liability Coverage Part, in connection with the Underlying Lawsuit. |
| e) | Any and all other applicable relief. |

DATE: July 18, 2023                                          Respectfully submitted,

By: /s/ Jonathan L. Schwartz
Attorney for Illinois Casualty Company

Jonathan L. Schwartz
FREEMAN MATHIS & GARY LLP
33 N. Dearborn St., Suite 1430
Chicago, IL 60602
Tel: (773) 389-6440
jonathan.schwartz@fmglaw.com