IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ILLINOIS CASUALTY COMPANY,

                Plaintiff,

v.

MEYERS' G.M. ENTERPRISES, INC.,
d/b/a Cajun Club, R&N ENTERPRISES,
LTD., d/b/a Cajun Club, ARIANNY
CELESTE LOPEZ, BRENDA GEIGER,
CIELO JEAN GIBSON, HILARY HEPNER,
JAIME LONGORIA, JESSICA
HINTON, JOANNA KRUPA,
KRYSTAL HIPWELL, LINA
POSADA, LUCY PINDER, MASHA
LUND, ROSIE WICKS, and
TARA LEIGH PATRICK,

                Defendants.

OPINION AND ORDER

23-cv-487-wmc

---

Plaintiff Illinois Casualty Company ("ICC") brings this insurance coverage declaratory judgment action against the defendants, who are owners of a strip club in Houlton, Wisconsin: Meyers' G.M. Enterprises, Inc., d/b/a Cajun Club ("Meyers"), and R&N Enterprises, Ltd., d/b/a Cajun Club ("R&N"). (Dkt. #1.) ICC also names several professional models as "potentially interested party" defendants by virtue of their status as successful plaintiffs in a previous lawsuit against defendants Meyers and R&N, in which ICC provided defendants Meyers and R&N with representation under a reservation of rights.[1]  That lawsuit resulted in a jury verdict and an award of attorney's fees in favor of the models, *Lopez et al. v. Meyers' G.M. Enterprises, Inc. et al.*, No. 3:21-cv-657-wmc (W.D.

---

[1] Plaintiffs in the underlying lawsuit were Arianny Celeste Lopez, Brenda Geiger, Cielo Jean Gibson, Hilary Hepner, Jaime Longoria, Jessica Hinton, Joanna Krupa, Krystal Hipwell, Lina Posada, Lucy Pinder, Masha Lund, Rosie Wicks, and Tara Leigh Patrick (the "models").

Wis.), and ICC now seeks a declaration that it had no duty to defend or indemnify defendants Meyers and R&N under four, consecutive "businessowners" insurance policies (the "policies"). Defendants Meyers, R&N, and the models (collectively, the "defendants") subsequently filed a joint motion to refer plaintiff's complaint to arbitration and to stay these proceedings under 9 U.S.C. § 3 pending the outcome. (Dkt. #7.) For the reasons set forth below, the court will grant defendants' motion and stay this case pending arbitration of the dispute.

## BACKGROUND[2]

### A. The Underlying Lawsuit

Plaintiff ICC is a corporation organized under the laws of Illinois with its principal place of business in Illinois. ICC agreed to insure defendants Meyers and R&N, which collectively do business as the "Cajun Club." Meyers and R&N are both corporations organized under the laws of Wisconsin with their principal place of business located in Houlton, Wisconsin. Each is wholly owned by Wisconsin residents Richard and Nicole Jacobson, who own and operate the Cajun Club. The models are from various places in the United States, as well as Australia and the United Kingdom.

In 2021, the models filed suit against defendants Meyers and R&N in the Western District of Wisconsin, alleging that defendants used their professional images in the Cajun Club's advertisements, including on social media, without authorization or compensation

---

[2] Unless otherwise indicated, the facts set forth in this section are taken from the complaint, the attached insurance policies, and relevant documents from the underlying lawsuit (No. 21-cv-657-wmc), and viewed in the light most favorable to plaintiff as the nonmovant.

and otherwise caused harm to their reputations. Due to these alleged misappropriations of their images and likenesses in social media advertisements on various dates between July 3, 2019, and June 27, 2021, the models sued for: false endorsement, false advertising, and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); tortious misappropriation, negligence, and unjust enrichment under Wisconsin common law; and violations of Wisconsin's right-of-privacy statute, Wis. Stat. § 995.50 et seq.

ICC defended Meyers and R&N against the models' claims subject to an express reservation of rights, including the right to disclaim any and all coverage available under the businessowners insurance policies. After the underlying lawsuit had been pending for two years, and shortly before trial was scheduled to occur, ICC further filed this declaratory judgment action to determine its coverage obligations and duty to defend Meyers and R&N. At that time, the court declined the parties' request to continue the upcoming trial in the underlying lawsuit, and on September 28, 2023, a jury returned a verdict in favor of the models. Specifically, the jury awarded damages in the amount of $70,000.00 and, thereafter, the court ordered defendants Meyers and R&N to pay $96,608.75 in attorneys' fees, plus $600.00 in costs, for a total of $167,208.75.

### B. ICC's Declaratory Judgment Action

ICC filed its complaint for a declaratory judgment against defendants Meyers, R&N, and the models as parties of interest, seeking a judicial determination that it had no duty to defend or indemnify Meyers and R&N in the underlying lawsuit under the "Businessowners Liability Coverage" portion of four, consecutive insurance policies. Specifically, ICC issued to R&N a "businessowners policy," effective October 13, 2018 to

October 13, 2019 (the "2018-2019 policy"). That policy was then renewed three times covering the additional periods between: October 13, 2019 to October 13, 2020 (the "2019-2020 policy"); October 13, 2020 to October 13, 2021 (the "2020-2021 policy"); and October 13, 2021 to October 13, 2022 (the "2021-2022 policy").[3]

Each policy issued by ICC to Meyers and R&N had Businessowners Liability Coverage (Form BL CF 01) for "personal and advertising injury," defined in relevant part to mean "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: . . . (4) [o]ral or written publication, in any manner, or material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; . . . or (6) [i]nfringing upon another's copyright, trade dress or slogan in your 'advertisement'." (Ex. A to Compl. (dkt. #1-1) at 102.) Under an exclusion found in policy provision B.1.d.(12), however, there is no Business Liability Coverage for any personal and advertising injury arising directly or indirectly out of an act or omission in violation of "[a]ny federal, state, county, municipal or local consumer fraud protection law, regulation, ordinance, order or directive barring fraud, unfair competition, and/or deceptive business practices[.]" (*Id.* at 84.)

For claims falling within the Businessowners Liability Coverage provisions, the policy allows for an award up to $1,000,000.00 for personal and advertising injury. (*Id.* at 7.) At the same time, coverage is limited for claims falling under the "Cyber Protection

---

[3] All four policies were attached to ICC's complaint (dkt. #1) as Exhibits A, B, C, and D. Because they are substantially identical, however, the court cites only to Exhibit A (dkt. #1-1) when referring to policy language relevant to the pending motion.

4

Endorsement (Form BL EC 06)," which covers "Multimedia Liability." (*Id*. at 123.) This provision offers more limited coverage for a claim of "multimedia peril," which is defined to mean "the release or display of any 'electronic media' on [the insured's] 'internet' site" that directly results in, among other things, harm to a person's reputation, invasion of privacy, or commercial misappropriation of "name, person, or likeness." (*Id*. at 138.) Claims falling under this provision limits coverage on a per-claim basis up to $50,000.00. (*Id*. at 123.)

In this case, ICC unsurprisingly maintains that there is no Businessowners Liability Coverage because the models' underlying claims fall within an exclusion for "multimedia peril," while conceding that there "may" be limited coverage under the Cyber Protection Endorsement. Therefore, ICC asks the court to declare that it had no duty to defend nor to now indemnify defendants Meyers and R&N, at least under the policies' Businessowners Liability Coverage provisions.

C. **Defendants' Motion to Compel Arbitration**

In contrast, defendants Meyers and R&N, as well as the models, jointly argue *any* insurance coverage or duty-to-defend dispute must be referred to arbitration, noting in particular that *all* of the policies issued by ICC contain a five-sentence, "Arbitration" clause located in the Cyber Protection Endorsement form, which reads as follows:

> Notwithstanding any other provision of this form or the Policy, any irreconcilable dispute between us and an "insured" is to be resolved by arbitration in accordance with the then current rules of the American Arbitration Association [("AAA")], except that the arbitration panel shall consist of one arbitrator selected by the "insured", one arbitrator selected by us, and a third independent arbitrator selected by the first two

5

>arbitrators. Judgment upon the award may be entered in any court having jurisdiction. The arbitrator has the power to decide any dispute between us and the "insured" concerning the application or interpretation of this form. However, the arbitrator shall have no power to change or add to the provisions of this form. The "insured" and us will share equally in the cost of arbitration.

(Ex. A to Compl. (dkt. #1-1) at 144.)

During the underlying lawsuit, defendants Meyers and R&N asked ICC to arbitrate the coverage issues raised in its late-filed declaratory judgment action, but were refused. Defendants now move for an order compelling arbitration of the dispute and staying this case pending the outcome of arbitration proceedings.

OPINION

The Federal Arbitration Act ("FAA") mandates enforcement of valid, written arbitration agreements. 9 U.S.C. § 2; *Circuit City Stores v. Adams*, 532 U.S. 105, 111-12 (2001). The FAA also "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Systems Corp. v. Lewis*, 584 U.S. 497, 505-506 (2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Where a contract contains an arbitration clause, therefore, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

To give effect to this liberal policy favoring arbitration, "[t]he FAA provides for stays of proceedings in federal district courts when an issue presented in the proceeding is referable to arbitration, and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3 and 4). To compel arbitration, a party must merely show (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration. *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 781 (7th Cir. 2014) (quoting *Zurich American Ins. Co. v. Watts Industries, Inc.*, 466 F.3d 577, 580 (7th Cir. 2006)); *Moorman v. Charter Commc'ns, Inc.*, No. 18-cv-820-wmc, 2019 WL 1930166, at *3 (W.D. Wis. May 1, 2019).

Whether a binding arbitration agreement exists is determined under principles of state contract law. 9 U.S.C. § 2; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Where "the making of the agreement for arbitration . . . is not in issue," the court shall order "the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "But if the party opposing arbitration identifies a genuine dispute of material fact regarding whether the parties agreed to arbitrate in the first place, there must be a trial on that issue." *Kass v. Paypal Inc.*, 75 F.4th 693, 700 (7th Cir. 2023) (citing 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."); *see also Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002) (applying the standard found in Federal Rule of Civil Procedure

7

56, "the opposing party must demonstrate that a genuine issue of material fact warranting a trial exists").

### I. The Agreement to Arbitrate and the Scope of Arbitrability

Plaintiff ICC neither disputes that there *is* an arbitration clause in the insurance policies nor that it refused to arbitrate this dispute under the terms of that agreement. Instead, plaintiff purports to dispute whether the arbitration clause applies to claims concerning its duty to defend and indemnify Meyers and R&N in the underlying lawsuit. Specifically, plaintiff argues that the court should overlook the arbitration agreement because it is located in the Cyber Protection portion of the insurance policies, meaning its claim -- that Businessowner Liability Coverage does *not* apply -- is not covered within the scope of that clause and is not arbitrable. As defendants note, however, this court lacks authority to decide that issue because, for reasons discussed further below, the arbitration agreement's incorporation of AAA rules delegates questions of arbitrability to the arbitrators and must be enforced.

### II. Delegation of Arbitrability Determination

Defendants point out that the arbitration agreement in each of the applicable insurance policies expressly calls for "arbitration in accordance with the then current rules of the American Arbitration Association." (Dkt. 8, at 7) (citing Ex. A to Compl. (dkt. #1-1) at 144.) Moreover, when an arbitration agreement "explicitly refers to the AAA rules, those rules become 'incorporated' into the agreement between the parties." *Commc'ns*

8

*Workers of Am., AFL-CIO v. Sw. Bell Tel. Co.*, 953 F.3d 822, 827 (5th Cir. 2020) (quoting *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012)).

The current AAA rules expressly delegate arbitrability issues, including those regarding the scope of arbitrability, to the arbitrator.[4]  *See* AAA R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to the court.").  Further, the Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).  Thus, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Henry Schein*, 586 U.S. at 69; *see also Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) ("Parties may generally shape such agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes."). Indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

---

[4] *Commercial Arbitration Rules and Mediation Procedures*, American Arbitration Association (Sept. 1, 2022), available at https://www.adr.org/rules-forms-and-fees (last accessed July 29, 2025).

There is no dispute that the insurance policies at issue here have valid arbitration clauses that incorporate the AAA rules, and while the Seventh Circuit may not have addressed the question directly,[5] an overwhelming consensus of other courts, including district courts within the Seventh Circuit, have held that an arbitration agreement's incorporation of AAA rules is "clear and unmistakable" evidence of the parties' intent to delegate questions of arbitrability to the arbitrator. *See Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D. Ill. 2021) ("Every federal court of appeals to consider the question -- twelve of thirteen -- has found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'") (citations and internal quotations omitted); *see also Boehm v. Getty Images (US), Inc.*, No. 16-cv-311-jdp, 2016 WL 6110058, at *2 (W.D. Wis. Oct. 19, 2016) ("Although the Seventh Circuit has yet to address the question, the consensus view is that reference to the AAA's Rules in an arbitration clause reserves threshold questions of arbitrability to the arbitrator.").[6]

---

[5] The Seventh Circuit has come close, affirming a district court's determination that incorporating the AAA rules provides clear and unmistakable evidence of intent to delegate threshold issues of arbitrability to the arbitrator, while holding that "if there is a contract, then an arbitration clause may delegate *all other issues*, including defenses, to the arbitrator." *K.F.C. v. Snap, Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) (emphasis added), *affirming K.F.C. v. Snap, Inc.*, No. 3:21-cv-9, 2021 WL 2376359 (S.D. Ill. June 10, 2021).

[6] The Indiana Supreme Court recently reached the same conclusion when compelling arbitration of a similar declaratory judgment action filed by ICC, holding that threshold issues of arbitrability under a cyber protection endorsement to a business insurance policy were delegated to an arbitrator. *See Ill. Cas. Co. v. B&S of Fort Wayne, Inc.*, 235 N.E.3d 827 (Ind. 2024); Dkt. #26.

10

Given the great weight of authority in its favor, this court is similarly inclined. As a result, plaintiff must present its claims against defendants to an arbitrator, and an arbitrator will decide which of these must be arbitrated, although the court will stay, rather than dismiss, this lawsuit should the panel of three arbitrators selected under the parties' agreement decide some further action is necessary in this case.

## ORDER

IT IS ORDERED that:

1) Defendants' joint motion to refer the complaint to arbitration and to stay proceedings (dkt. #7) is GRANTED.

2) The parties shall have 90 days to initiate arbitration proceedings of the remaining claims in this case.

3) Defendants' motion for status update (dkt. #27) is DENIED AS MOOT.

4) This case is STAYED pending further proceedings in arbitration.

Entered this 12th day of August, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

11